FILED
2008 Feb-13 PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| Kimberly Ray, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 06-G-4880-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Kimberly Ray, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable

by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Russell W. Lewis, determined the plaintiff met the first two tests, but concluded did not suffer from a listed

impairment.  The ALJ found the plaintiff unable to perform her past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairments (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."

McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The plaintiff appeals from a partially favorable decision by the Commissioner that found her disabled as of May 17, 2002, due to an injury to her ankle caused by a fall in her back yard.  It is the plaintiff's contention that she was disabled prior to that time because of residuals of an injury to her left wrist in a motor vehicle accident April 18, 2000.

The plaintiff suffered an injury to her left wrist in a motor vehicle accident April 18, 2000.  Although initially no fracture was diagnosed, she was ultimately found to have a fracture approximately one month later.  From May 2000 through early 2002 the plaintiff was seen numerous times by Dr. Bacon.  During this time Dr. Bacon continuously prescribed Lortab for her pain.  A July 2000 physical therapy note indicates the plaintiff's pain was a 9 to 10 (on a scale

of one to ten) at its worst. [R 285] Physical therapy ultimately gave the plaintiff no relief. [R 162] On December 1, 2000, Dr. Bacon noted the plaintiff "has had persistent pain and swelling over the dorsal aspect of her wrist." [R 109] He noted that a dorsal ganglion had appeared, and as it "enlarged, her pain has become more and more severe." [R 109  The ganglion was removed. [R 110]

On January 29, 2001, Dr. Bacon noted the plaintiff still had pain, numbness and tingling. Both Tinel's sign and Phalen's maneuver were positive.[1] On February 2, 2001, Dr. Bacon noted the plaintiff "has had a long history of pain, numbness, and tingling of the left hand and thumb since a motor vehicle accident. She is felt to have left carpal tunnel syndrome and a de Quervains's tendonitis of her left wrist. This had failed conservative treatment." [R 144] Dr. Bacon performed carpal tunnel release of the plaintiff's left wrist. [R 115] On April 3, 2001, Dr. Bacon continued to diagnose the plaintiff with carpal syndrome. [R 157] By May 1, 2001, Dr. Bacon had added the diagnosis of RSD[2] and Elavil was

---

[1]  Tinel's Sign is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve."  With Phalen's maneuver, "the size of the carpal tunnel is reduced by holding the affected hand with the wrist fully flexed or extended for 30 to 60 seconds, or by placing a sphygmomanometer cuff on the involved arm and inflating to a point between diastolic and systolic pressure for 30 to 60 seconds." Both are used to detect carpal tunnel syndrome. Dorland's Illustrated Medical Dictionary (28th Edition).

[2]  "Reflex sympathetic dystrophy syndrome (RSDS) is a chronic condition characterized by severe burning pain, pathological changes in bone and skin, excessive

(continued...)

added to her prescriptions.  She was to have pain blocks.  [R 157]  On May 21, 2001, the plaintiff had the prescribed pain blocks at C-6.  [R 132]  On May 22, 2001, Dr. Bacon noted that treatment had given no relief.  [R 156]  On June 12, 2001, Neurontin was added to her medications.  She continued to be diagnosed with RSD of the left arm.

On September 6, 2001, apparently in connection with a lawsuit arising from her motor vehicle accident, the plaintiff was evaluated by Patsy Bramlett, a vocational expert often used by the Commissioner.  Ms. Bramlett's report contains the following:

> On July 13, 2001, Dr. Bacon advised that [plaintiff] had achieved maximum medical improvement.  Dr. Bacon reported that Ms. Ray continued to experience "severe pain, unresponsive to available treatment" (to include physical therapy).  Dr. Bacon assigned a 25% permanent partial impairment rating of the left upper extremity due to an onset of reflex sympathetic dystrophy (RSD).  Dr. Bacon stated that Ms. Ray had been unable to work since the date of her MVA.[3]

---

[2] (...continued) sweating, tissue swelling, and extreme sensitivity to touch.  The syndrome, which is a variant of a condition known as causalgia, is a nerve disorder that occurs at the site of an injury (most often to the arms or legs.)  It occurs especially after injuries from high-velocity impacts such as those from bullets or shrapnel.  However, it may occur without apparent injury."  National Institute of Neurological Disorders and Stroke, Reflex Sympathetic Dystrohy Syndrome (Fact Sheet) <http://www.ninds.nih.gov/healinfo/DISORDER/rsds/rsds.htm> (NIH Publication No. 96-4173 original publication date September 1996) (Hereinafter "Fact Sheet").

[3] Although Dr. Bacon's statement of July 13, 2001, is not part of the record, his treatment notes show that he examined the plaintiff on July 10, 2001, and that a letter was
(continued...)

[R 134]  Ms. Bramlett noted the plaintiff

> reports to be experiencing constant moderately severe pain in her left hand/wrist/arm with a burning type sensation.  On a scale of 1 to 10 (with 10 representing disabling pain), [plaintiff] describes her level of pain as a "7" without use of her left hand and a "8.5 or 9" with use.

[R 134]  Ms. Bramlett concluded that "[w]ithout some reduction in her level of pain, I find [plaintiff] to be 100% vocationally disabled for even sedentary or light jobs due to her unresolved pain."  [R 136]

On December 4, 2001, on exam Dr. Bacon found plaintiff's skin cool and shiny.[4]  [R 153]  On February 7, 2002, Dr. Bacon noted the plaintiff was no better and he continued his diagnosis of RSD.  [R 152]

On April 9, 2002, the plaintiff underwent a consultative examination at the request of the Social Security Administration.  Dr. Gill's examination note states the plaintiff's left arm looked normal.  [R 167]  He noted that "she uses it well and demonstrates full range of motion in all of the joints."  [R 167]  However, he noted she "complains of tenderness to palpation on the radial side of the wrist."

---

[3] (...continued)
sent to plaintiff's attorney on July 17, 2001.  [R 155]  Formal rules of evidence do not apply to proceedings before an ALJ.  See 42 U.S.C.A. § 405(b)(1)("Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure."); 20 C.F.R. § 404.1512(b) ("Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim.")

[4] These findings are consistent with the clinical diagnostic guidelines for diagnosing RSD.  (See http://www.rsds.org/3/clinical_guidelines/index.html)

8

[R 167]  He also found her "fingers cool to touch and slightly cyanotic" with "sluggish capillary refill in the fingertips."  [R 167]  Dr. Gill concluded:  "The patient has a history of left wrist injury with subsequent complications and now has RSD.  She appears to have a permanent impairment and I do not believe she will be able to use this hand for any significant activity."  [R 168]

After the plaintiff suffered the injury to her ankle in May 2002, Dr. Bacon completed a form supporting her husband's request for family leave.  On that form, dated August 11, 2003, Dr. Bacon indicated it was RSD of the left arm that he believed supported the request.  [R 238]  He concluded:  "[P]atient is disabled and has been since 04-18-00."  [R 238]

The plaintiff argues the ALJ improperly refused to credit the opinions of her treating physician, Dr. Bacon, who twice opined the plaintiff was disabled.  As set out above, on July 13, 2001, Dr. Bacon  reported that Ms. Ray continued to experience "severe pain, unresponsive to available treatment."  [R 134]  Also, in connection with an application by the plaintiff's husband for medical leave in 2003, Dr. Bacon opined the plaintiff had been disabled since April 18, 2000.  [R 238]  In addition, Ms. Bramlett, a vocational expert, opined on September 6, 2001, that "[w]ithout some reduction in her level of pain, I find [plaintiff] to be 100% vocationally disabled for even sedentary or light jobs due to her unresolved pain."  [R 136]  Ms. Bramlett's opinion as to the impact of the

9

severe pain reported by the plaintiff (and confirmed by Dr. Bacon) is entitled to great weight because she is a vocational expert.

The ALJ did not specifically address Dr. Bacon's opinion as embodied in Ms. Bramlett's report. However, the only reason he gave for rejecting Ms. Bramlett's opinion of disability was "because the claimant reported having significantly higher levels of left arm pain to Ms. Bramlett than she did at the hearing." [R 33] However, the plaintiff's testimony about her hand pain at the time of the hearing is not inconsistent with a higher level of pain two years earlier.[5] Therefore, the reason given by the ALJ for rejecting the opinion of Ms. Bramlett regarding the vocational impact of the plaintiff's severe hand pain is not supported by substantial evidence.

The overwhelming evidence in this case shows the plaintiff suffered from severe disabling hand pain from April 18, 2000, through May 17, 2002. The plaintiff's treating doctor prescribed narcotic pain medication, physical therapy, and pain blocks, none of which relieved the plaintiff's pain. He removed a ganglion cyst and performed carpal tunnel release surgery and neither relieved her pain. Dr. Bacon believed the plaintiff suffered from "severe pain, unresponsive to

---

[5] Dr. Bacon reported the plaintiff suffered from severe pain in July 2001. Ms. Bramlett's report was dated September 6, 2001. The plaintiff's ALJ hearing was September 30, 2003.

available treatment" and a vocational expert often utilized by the Commissioner opined that the plaintiff was unable to work due to her pain.  This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.  An appropriate order will be entered contemporaneously herewith.

   DONE and ORDERED 13 February 2008.

              _____
               UNITED STATES DISTRICT JUDGE
                  J. FOY GUIN, JR.